Bertha B. Newby, Appellee, v. Charles Dudley Kingman and R. G. Real, Appellees. Thomas V. Wright, Trustee Under Last Will and Testament of Carrie Kingman, Deceased, Appellant.

Gen. No. 9,262.

Opinion filed February 25, 1941.

JACOB BERKOWITZ and KIGER & DILSAVER, both of Mattoon, for appellant; GEORGE N. GILKERSON, of Mattoon, of counsel.

CRAIG & CRAIG, of Mattoon, for certain appellee.

J. ROY BROWNING, of Chicago, for certain other appellee.

HARRY I. HANNAH and THOMAS R. FIGENBAUM, both of Mattoon, for certain other appellee; ROGER FRUIN, of Mattoon, of counsel.

MR. PRESIDING JUSTICE FULTON delivered the opinion of the court.

Bertha B. Newby, the plaintiff appellee and a real estate broker in Coles county, Illinois, brought suit in the circuit court of said county against Charles Dudley Kingman and R. G. Real, defendants appellees, Thomas V. Wright, trustee under the last will and testament of Carrie Kingman, deceased, defendant appellant, and other parties not interested in this appeal, to recover real estate commission for the sale of a business building in Mattoon, Illinois. The property, known as the Demaree Building, had been devised by the testatrix in equal shares to her two children, Bertha Kingman Rogers and Charles Dudley Kingman, and to two trustees for a third child, Tracy Kingman.

The case was tried before the court without a jury and the court found for the appellee, Bertha B. Newby, as against the appellant, Thomas V. Wright, trustee of the last will and testament of Carrie Kingman, deceased, in the sum of $666.66, and costs of suit. Judgment was entered upon such findings against the appellant, resulting in this appeal. In its judgment the court further found that the plaintiff take nothing by her suit against Charles Dudley Kingman and R. G. Real, or either of them. No complaint or appeal is taken from that part of the judgment and will receive no further notice from this court.

The cause was tried upon the second-amended complaint of appellee and alleged in brief as follows: The ownership of the property; the creation of the trust by the will containing the power and authority of the trustees to sell real estate; that the appellee, a real estate broker, was requested by the trustees of said will to find a buyer and she did find and produce a buyer, who did in fact purchase at the price she procured him to offer; that the commission due was $2,000; that the sale was reported by the trustees to the court together with the request for allowance of a $2,000 commission out of the total sale price of $60,000, of which the trustees portion would be one third; that the court approved the sale and allowance of commission and ordered the trustees to pay their proportionate share and that the trustees had refused to pay.

The answer of appellant denied most of the material allegations of the complaint.

By his motion to strike the amended complaint, which was renewed at the close of plaintiff's case, and by his appeal from the judgment, the appellant raises the question of law as to whether, even if there was a contract and performance thereof by the appellee, could the appellee recover from the appellant where the appellant was a successor trustee, who had no connection with the contract or performance thereof.

The facts pertaining to that issue are as follows: In her last will and testament, Carrie Kingman bequeathed and devised one third of her property to her son, Charles Dudley Kingman, and R. G. Real, as trustees, upon the following expressed trust: ''Said Trustees shall, upon my death, take possession of said one-third interest in said property, and shall manage and care for the same, investing any portion thereof from time to time as circumstances require in income producing bonds or securities to be approved by the court, and shall pay the entire income from the property hereby conveyed after payment of expenses, to my son, Tracy Kingman, and I further authorize and direct said Trustees, if in their judgment it is advisable to do so, to sell and convey any of the real estate composing said trust estate, at either public or private sale, and to execute proper deeds of conveyance therefor, and to invest the proceeds of said sale or sales in income producing bonds or securities to be approved by the court. At the death of my son, this trusteeship shall terminate and all of said property composing said Trust Estate shall descend to the children of my son, Tracy Kingman.''

It became the desire of Charles Dudley Kingman, Bertha Rogers and the trustees, to sell the Demaree Building. Early in 1936, the appellee, while working as a saleswoman for the firm of J. B. Franklin & Son, learned of the intended sale. She contacted Louis Linder as a prospective buyer. In September, 1936, she obtained a brokers license and procured a sale price of $70,000 for the building from the trustees. She then frequently negotiated with Louis Linder who made a standing offer of $60,000, and on July 23, 1937, purchased the property at that figure. The offer of $60,000 had been communicated to the trustees by the appellee and at first refused. After the sale she notified them she was entitled to a commission. In July, 1937, the trustees filed their sworn petition in

the circuit court asking the approval of the sale for $60,000 and set up that a commission of $2,000 was to be paid out of the sale price. On August 3, 1937; the circuit court entered an order approving the sale, and the allowance of a commission of $2,000, and ordered the trustees to pay their proportionate part, or one-third of such commission.

In December, 1937, Charles Dudley Kingman and R. G. Real filed their final report as trustees, and were discharged. The appellant, Thomas V. Wright, was then appointed as successor trustee. Neither he, nor the former trustees have ever paid any commission to appellee.

In contending that no possible judgment could be entered against appellant or against Charles Dudley Kingman and R. G. Real if they were still the trustees, appellant quotes from a long list of Illinois cases holding that if a trustee makes a contract in his own name for the benefit of the trust estate, he is liable on it personally and not in his representative capacity, whether he describes himself as trustee or not. Those cases in our opinion are clearly distinguishable from the case under consideration. In the case of *Equitable Trust Co. of Chicago v. Taylor,* 330 Ill. 42, where the trust agreement gave power to three trustees to execute notes in behalf of the trustor in carrying on his business, and one of the trustees borrowed $1,000 from the bank and signed a note "William Goyette, per L. Taylor, Trustee," it was held that the trustee exceeded his authority, and that he could not create a lien on the trust estate without express authority given by the instrument creating the trust. A different situation would have arisen if all three trustees had executed the note and been sued by the bank for non-payment.

In *Wahl v. Schmidt,* 307 Ill. 331, and *O'Connor v. Rathje,* 298 Ill. App. 489, both cases relied upon by appellant, an attempt was made to hold the trust es-

tates for the negligence of the trustees. The court held in each case that the duties of a trustee make him personally liable for torts committed by him or the agents or servants in his employ, but that a trustee is not liable in his representative capacity for an injury caused by his negligence in the management of the property held in trust. We believe a different rule applies where a lien is created on the trust estate in pursuance of express authority given in the trust instrument.

Trustees and trust estates would be greatly hampered and hindered if they could not employ assistants and agents to aid in carrying out the powers contained in the trust, and to make the trust estate liable for the payment of such services. It is common practice for trustees to employ attorneys, secretaries and other agents under general powers given them in the trust instrument. We can see no reason why real estate brokers should not be employed to assist in making sale of real estate where the power of sale is expressly authorized. It is our opinion that the courts of Illinois have indicated approval of these principles. In *Johnson v. Leman,* 131 Ill. 609, it was held that, A Trustee cannot create a lien on the trust estate, even by his contract, without express authority given by the instrument creating the trust. In 2 Perry on Trusts, sec. 912, it is stated that a trustee may employ necessary assistants in executing the trust and pay for their services from the trust fund.

In the present case, under the terms of the last will and testament of Carrie Kingman, deceased, Charles Dudley Kingman and R. G. Real, as trustees named therein, were expressly authorized to sell the real estate of said decedent, at either public or private sale, and execute the proper deeds of conveyance therefor. While no express authority was granted said trustees to employ brokers or other agents in connection therewith, nor to compensate them for their services,

such authority is incident to and is implied in order to carry out the powers granted. Such acts do not constitute a delegation of trust powers and such expenses are the obligations of the trust estate. *Hibernian Banking Ass'n v. Roseboom,* 214 Ill. App. 324; *Coleman v. Connolly,* 242 Ill. 574.

Thomas V. Wright, as successor trustee took over the management of said trust, together with the obligations chargeable thereto, and while not personally liable therefor, not having contracted the debt, he is obliged to pay the same out of the funds belonging to said trust.

The appellant as further grounds for reversal urges the question as to whether appellee ever had a contract with the former trustees and, if she did, as to whether she performed the contract, so as to be entitled to recover anything from appellant. The testimony in the case shows plainly that it was the appellee who contacted the purchaser Linder. It was she who prepared financial statements regarding the building for him and got him interested as a prospective buyer. She took Linder and his contractor over for an inspection of the building. She conferred with Charles Dudley Kingman and R. G. Real, the trustees, both in person and by letter. For more than a year she saw Linder at frequent intervals and procured his standing offer of $60,000 for the property, and it was finally sold to him at that figure. There is plenty of evidence in the record, both oral and documentary, to sustain a finding that appellee was the procuring cause of the sale. We further believe the oral testimony of the appellee, Kingman, Real, Linder and others, together with the correspondence between the appellee and Kingman and Real was sufficient to show her employment by the trustees to sell.

The judgment of the trial court is affirmed.

*Affirmed.*